[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action seeking a dissolution of marriage on the ground of irretrievable breakdown was commenced by the plaintiff husband on December 3, 1998. On January 28, 2002, the defendant wife filed both an answer, in which she admitted to the material allegations of the complaint, and a cross-complaint.
A trial was held on January 29 and 30, 2002. Both parties and their attorneys were present throughout the trial. In addition to the admission into evidence of numerous documents, testimony given by the plaintiff; the defendant, Carol Dougherty, a certified real estate appraiser, William Sudol, the Administrator of the State Teacher's Retirement Board, James A. Gobes, a consulting actuary, and Robert Corso, the Director of Human Resources for the East Hartford Public School System. The court also took judicial notice of the prior proceedings in the file.
Based upon a thorough evaluation of the evidence presented, as well as a careful assessment of the credibility of the witnesses, the court finds the following facts to have been proven.
The plaintiff and the defendant, whose maiden name was Kathryn W. Walsh, were married at Manchester, Connecticut on May 15, 1982. Both parties were residents of the State of Connecticut for at least one year prior to the date of the filing of the complaint and the cross-complaint. One minor child, Robert Smith, whose date of birth is March 29, 1988, is issue of this marriage. Neither the State of Connecticut, nor any town or municipality thereof, has contributed to the support or maintenance of the parties or the minor child. The court finds that it has jurisdiction over the parties and the marriage and that all statutory stays have expired.
The plaintiff is 51 years old (DOB: 9-20-50) and in good health. He received a BA Degree in education from Eastern Connecticut State College CT Page 1681 in 1973, a MA degree in education from Connecticut Central State College in 1982, and a sixth year educator certificate from the University of Connecticut in 1994. The plaintiff also completed the course work required for a PhD Degree at the University of Connecticut, but he never completed the dissertation required for said degree.
Mr. Smith has been a teacher for twenty-seven years and is currently employed in that capacity by the East Hartford Board of Education. He earns approximately $68,000 per year. The current contract between the teachers union and the East Hartford Board of Education for the period of 7/1/2001 through 6/30/2004 provides for annual teacher raises of 3%, plus additional step increases depending upon the academic degrees and certificates of the teacher.
The defendant is 44 years old (DOB: 5-1-57) and in good health. She received a BA Degree in Spanish from the University of Connecticut in 1979. She subsequently took a basic accounting course at Manchester Community College. The defendant considered a teaching career subsequent to graduating from college; however, she did not pursue that goal after taking one postgraduate course in education at Central Connecticut State College in 1980.
Mrs. Smith was employed with TRC Environmental Consultants from 1979 until 1986. She began this employment as an accounting clerk earning $3.25 per hour. When she left TRC in 1986 she was an accounting assistant earning $10.00 per hour. The defendant's job responsibilities included handling billing, accounts receivable, and cash flow. While the positions of accounting clerk and accounting assistant no longer exist at TRC, the company currently has a somewhat comparable position of billing administrator which pays between $26,000 and $28,000 at the entry level. There is no credible evidence that the defendant is currently qualified, or would be considered, for a similar position with TRC or any other company.
The defendant stopped working full time in 1986 in order to devote more of her time to caring for the plaintiff's two children from his prior marriage, as well as her own child who was born in 1988. She did not return to full time employment until 1999. Between 1986 and 1998 she obtained part time work which would allow her to accommodate the various activities of the children. From 1986 to 1998 she worked for a company called Health Trax earning between $8.00 and $9.00 per hour as a bookkeeper/payroll clerk. She also worked part time from 1996 to 1998 for the Town of Coventry Board of Education as a para-professional classroom teacher aid earning between $4,000 and $5,000 per year. Finally, from 1989 to 1990, the defendant worked as a bookkeeper for Account Temps and a small woodworking company earning $12.00 per hour. CT Page 1682
Despite the fact that there were financial concerns early in the marriage, there is no credible evidence that the defendant's part time employment subsequent to 1986 was a source of conflict between the parties. The defendant's decision to work part time while functioning as a homemaker and mother was apparently acceptable to both parties.
The defendant is currently employed full time as a school library assistant by the Town of Manchester Board of Education. She began to work for the Town of Manchester Board of Education as a para-professional in the Fall of 1998. The defendant's current annual salary is approximately $17,400, plus health and retirement benefits.
The parties first met in 1978. At the time, the plaintiff was divorced and had two minor children, Jessica and Adam, from his prior marriage. In 1979 the plaintiff was given physical and legal custody of the minor children and he and the children moved in with his mother. The plaintiff and the children lived with his mother until 1981 when, in order to provide growing space for the children, he and the defendant purchased a modest house in East Hartford where they moved in together with the children. During this period of time the defendant was working for TRC Environmental Consultants and the plaintiff was teaching and working on earning his Masters Degree. At the time of their marriage on May 15, 1982, the plaintiff was 31 years old, the defendant was 25 years old, Jessica was about 10 years old and Adam was about five years old.
Within a relatively short period of time the marriage began to manifest signs of strain. Money was tight and the parties were attempting to learn how to become parents to the two young children. Additionally, Adam's behavior was becoming a problem. He was subsequently diagnosed as suffering from Attention Deficit Disorder. All of this generated increasing stress on both parties and the marriage, resulting in arguments and a decreasing level of meaningful communication between the parties.
By 1985, the situation had worsened to the point where the parties agreed upon a three-month trial separation. The plaintiff and the children moved in with his mother and the defendant remained at the marital home. During this time the plaintiff sought and obtained a modest amount of child support from his ex-wife who also agreed to expanded visitations with the children. This, it was hoped, would relieve some of the strain on the family, which it did. The trial separation ended after the planned three month period and the family was reunited in the marital home in East Hartford.
In 1986 the parties were involved in an incident of domestic violence CT Page 1683 resulting in the arrest of both individuals. The court is unable to conclude from the testimony of the parties who, if anyone, was more at fault for this incident. Thereafter, the plaintiff entered into individual counseling and both parties engaged in parenting counseling to help them cope with Adam's behavioral issues.
By 1987 the marriage was perceived by the parties to be relatively stable and they decided to have a child. As a result, Robert Kent Smith was born on March 29, 1988. In 1989 the parties sold their house in East Hartford and purchased a house in Coventry, Connecticut. The plaintiff; defendant and three children moved into their new home in October 1989.
In the Summer of 1995 the family vacationed together by taking a trip to the Western United States, but by the Fall of 1995 the marriage was once again in trouble. Thereafter, communication between the parties deteriorated from yelling and screaming at each other, to only exchanges of written notes, to separate bedrooms, and then virtually no communication at all. The plaintiff began spending more and more time away from the house and in 1998 he moved out of the marital home and filed for a dissolution of the marriage.
While each party blames the other for the breakup of the marriage, the court did not find the testimony of either party to be particularly credible regarding the causes for the breakdown of the marriage. The court does find, however, that the allegations by each party that he or she was berated, humiliated and verbally abused by the other over the years is more likely than not true. While there is evidence that the plaintiff developed a non-sexual relationship with another woman late into the marriage, there is no credible evidence that he ever had an extramarital sexual affair. The court finds that the behavior of both parties contributed to the breakdown of the marriage.
The principal tangible assets of the marriage, as of the date of trial, consist of the marital home located at 347 Root Road, Coventry, Connecticut, and a 1/5th interest by the defendant in a residential building located at 43 Ridge Street, Manchester, Connecticut. The Root Road property currently is encumbered with two mortgages for loans of approximately $92,000 and $11,000 respectively.
The defendant testified that she believes the 347 Root Road property to be worth approximately $185,000. Her opinion is based upon her recollection of a recent assessment by the Town of Coventry as well as an appraisal done in 2000. The defendant did not offer any documentary evidence in support of her opinion.
The 347 Root Road property was appraised as of January 22, 2002, by CT Page 1684 Carol Dougherty, a certified real estate appraiser employed by Appraisal Resources in Manchester, Connecticut. Dougherty has 18 years of experience in real estate appraisal work and has done thousands of appraisals. She has testified as an expert witness on prior occasions. Using acceptable appraisal methods, and after taking into consideration an existing drainage easement and a CLP right of way, she appraised the value of this property at $232,000. Daugherty also appraised the property located at 43 Ridge Street, Manchester, CT as of January 24, 2002, at $130,000.
The court finds Dougherty's testimony and expert opinions as to the values of the properties to be credible, and her appraisal figures accurately represent the current market value of said properties.
As to additional assets of the parties, the court finds that the value of their 1995 Chevrolet pick-up truck is $9,000, the value of their 1997 Plymouth Voyager van is $10,000, and the value of their boat and trailer is $12,000. The plaintiff has approximately $7,800 in his Dodge-Cox Stock Fund, $8,300 in an American Express Fund, and $2,900 in his Travelers deferred income fund. The defendant has very modest retirement and deferred compensation funds. Both parties have modest checking/savings accounts in their own names. The defendant has a $6,000 life insurance policy on her life through her employment. The plaintiff has a $60,000 face value insurance policy on his life with a current cash value of approximately $4,400.
In 1996 the plaintiff received a total of $60,000 from his mother's estate. of that sum, he paid $1,500 in attorneys fees and $1,500 for restitution for a criminal matter involving his son, Adam. Additionally, $36,000 was placed in a Vanguard Fund, $18,000 was placed in a Dodge and Cox Stock Fund, and $3,000 was used as a lump sum payment for a life insurance policy. Subsequently, $20,000 of the funds in the Vanguard account were used to make payments on the second mortgage for the marital home and $6,000 was used to pay taxes for the marital home. The remaining $10,000 was used to pay the fees of a court appointed Guardian Ad Litem for the minor child in this case. Some of the money in the Dodge and Cox account was used to pay for attorney fees, a hearing aid for the plaintiff, and Robert's private school tuition.
The marital asset which is at the heart of this limited contested dissolution involves the plaintiff's vested Teacher's Retirement Account. The administrator of the State Teachers' Retirement Fund, William Sudol, testified as to the current values of the plaintiff's retirement plan. The court finds Sudol's testimony to be totally credible. Additionally, the court heard from James A. Gobes, a consulting actuary and a Fellow of the Society of Actuaries with many years of CT Page 1685 experience in evaluating pensions. Gobes, using figures provided by Mr. Sudol, and utilizing assumptions generally accepted in the actuarial community, estimated the current actuarial value of the pension benefit to be $296,295.
Mr. Smith will be eligible for full retirement benefits after reaching the age of 60 at which time he will have 35 years of credited service. As of June 30, 2001, the most recent date the plan was evaluated, the plaintiff was credited with 26.3 years of service toward retirement under the State Teachers' Retirement Plan. The current (June 30, 2001) value of his full retirement benefit, will be $2,852.82 per month at age sixty. If the plaintiff chooses to take an early retirement at this time, his monthly pension will be reduced to $1,587.88 per month. These amounts will be further reduced if his pension benefits are shared with a coparticipant beneficiary. If the plaintiff dies before retiring the Teachers' Retirement Fund will pay to his survivor or beneficiary a cash death benefit currently valued to be $137,142.88.
The plaintiff also contributes 1% of his salary to a voluntarily supplemental retirement plan with the Teachers' Retirement Board. The June 30, 2001 balance in that fund was $12,716.97. Upon retirement the plaintiff will be able to either elect a lump sum payout or purchase an annuity with the funds in the account. If he dies before he retires the Retirement Fund will make a separate cash death benefit payment of $2,652.15 to his beneficiary or estate. The death benefit from the supplemental plan is less than the current amount in the account because in the supplemental plan interest is forfeited if the funds are withdrawn before retirement.
Finally, as of the date of trial, the plaintiff has accumulated a significant number of unused sick days. Upon retirement the plaintiff will be paid for 50% of his accrued vacation time, not to exceed 100 days.
Based upon the evidence presented, the court finds that the allegations of the complaint and cross complaint have been proven true and that the marriage has broken down irretrievably.
It is also the finding of the court that the defendant supported her husband's educational and career goals throughout the marriage. She also devoted much of her time and effort over the years in caring for her husband's children, as well as their own child, while both working outside of the home and maintaining the family home. While this was her choice, it nevertheless has created a significant difference in the current and potential income of the parties, and it is unlikely that the defendant will ever be able to reach the level of income that the CT Page 1686 plaintiff enjoys.
The court finds that the defendant's contributions to the husband, the children and the family during the almost twenty years of marriage are as significant and important to the accumulation and preservation of marital assets as are the contributions of the plaintiff.
Taking the above facts into consideration, as well as all of the statutory criteria, especially those set forth in § 46b-62, §46b-81, and § 46b-82, and applying said criteria to the evidence, the court enters the following orders:
(1). A decree is entered dissolving the marriage on the ground of an irretrievable breakdown.
(2). Pursuant to a written agreement and stipulation dated January 25, 2002, which the court finds to be fair and in the best interests of the minor child, the parties shall have joint legal custody of the minor child, Robert Kent Smith. The primary residence of the minor child shall be with the defendant mother. The plaintiff father shall have reasonable rights of parenting and visitation with the minor child.
(3). The plaintiff shall pay child support to the defendant in the amount of $175 per week until the child, Robert Kent Smith, graduates from high school, or attains the age of nineteen years, whichever occurs sooner. This child support amount may slightly deviate from the guidelines but the court considers it to be reasonable under the particular circumstances of this case when considering the totality of the financial orders of the court.
(4). The parties shall alternate claiming the minor as an exemption for income tax purposes. The plaintiff shall be entitled to claim the exemption to the 2002 tax year.
(5). The plaintiff shall provide health and dental insurance for the minor child through his employer for so long as he continues to have a child support obligation pursuant to these orders. After payment of the first $100 by the custodial parent, the parties shall share responsibility for the payment of all unreimbursed medical, dental and health related expenses for the minor child with the plaintiff being responsible for 75% and the defendant being responsible for 25% of such expenses. The provisions of § 46b-84 of the General Statutes shall apply.
(6). The defendant is 44 years old. After considering the defendant's education and work experience, the court was not persuaded that the CT Page 1687 defendant is significantly under employed at this time. She has a college degree, but it is not in a readily marketable field. Her work experience and skills are limited and she will need additional training, experience, and perhaps additional education, if she is to develop sufficient marketable skills to permit her to enter a competitive workforce and earn a salary sufficient to make her more financially independent. She will have to do this while continuing to raise a child through his adolescent years. All of this will take time and effort, and will require financial support, which the plaintiff is capable of providing.
Accordingly, the plaintiff shall pay alimony to the defendant in the amount of $350 per week for a period of five years and then $300 per week for an additional period of three years. The alimony shall be nonmodifiable as to either term or amount, except that said alimony shall earlier terminate upon the death of either party or the remarriage of the defendant. No alimony is awarded to the plaintiff.
(7). The plaintiff shall Quit Claim to the defendant all of his interests in the real property located at 347 Root Road, Coventry, Connecticut. Except for the existing second mortgage on said property which shall be the sole responsibility of the plaintiff; the defendant shall be solely responsible for all debts and expenses relating to said property including, but not limited to, the existing first mortgage, taxes, utilities, insurance and repairs. She shall hold the plaintiff harmless thereon.
The defendant shall give the plaintiff an interest free Promissary Note and a mortgage on the Root Road property in the amount of $40,000. Said Promissary Note shall become due and payable upon any of the following events, whichever shall first occur:
A. The refinancing of the principal mortgage.
B. The sale or transfer of the property.
 C. The failure of the defendant to use the marital home as her principal residence.
D. Ten (10) years from the date of the date of this judgement.
E. The death of either party.
(8). The plaintiff shall be solely responsible for the second mortgage of approximately $11,000 on the marital home and shall hold the defendant CT Page 1688 harmless thereon. The mortgage shall be paid in full by the plaintiff within eighteen months of the date of judgement in this case.
(9). The defendant shall maintain her current interest in the property located at 43 Ridge Street, Manchester, Connecticut free from any claims of the plaintiff. The Defendant shall be solely responsible for any debts relating to said property and shall hold the plaintiff harmless thereon.
(10). The defendant is hereby awarded 50% of the present value of the plaintiff's vested monthly retirement benefits under the Teachers' Retirement Plan. The plaintiff shall elect the 50% coparticipant retirement plan option[1] naming the defendant, Kathryn Walsh Smith, as the irrevocable and sole coparticipant beneficiary of said pension benefits. In the event of the plaintiff's death before his retirement the defendant shall be entitled to receive 50% of the value of the Teachers' Retirement Fund death benefit accrued as of the date of this order.
This award shall be in the form of a Domestic Relations Order, or any other document required by the Administrator of the Connecticut Teachers' Retirement Fund to accomplish the orders of the court, prepared by the attorney for the defendant.
(11). The plaintiff's voluntary supplemental retirement account, which is administered by the Teachers' Retirement Board, and any lump sum payments for unused sick leave upon his retirement, are awarded solely to the plaintiff and shall not be subject to any claims by the defendant.
(12). In order to provide some additional financial security for the defendant, the plaintiff is ordered to maintain the existing $60,000 face value American Express life insurance policy on his life, at his sole expense, naming the defendant as the sole irrevocable beneficiary of said life insurance policy until such time as: (a) the plaintiff retires under the Teachers' Retirement Plan and the defendant begins receiving her coparticipant monthly retirement benefits, or (b) the death of either party, whichever occurs sooner. The defendant shall make no claim for any value of said life insurance policy beyond its $60,000 face value.
The plaintiff shall not in any way encumber or reduce the value of said life insurance policy for so long as the defendant is the named beneficiary. Proof of the continuation of the life insurance policy and the defendant's status as its sole beneficiary shall be provided annually upon the request of the defendant.
(13). Except as herein provided, each party shall be solely responsible for the debts listed on their financial affidavits dated January 29, 2002, and shall hold the other harmless thereon. CT Page 1689
(14). The defendant is awarded sole interest in the 1997 Plymouth Voyager Van.
(15). The defendant is awarded sole interest in the 1995 Chevrolet pickup truck.
(16). The Four Winns boat and trailer are awarded to the plaintiff, free from any claims of the defendant.
(17). The plaintiff shall retain his interest in his Dodge and Cox Fund, American Express Fund, and Travelers Deferred Compensation Fund, free from any claims by the defendant.
(18). The defendant shall retain her interest in her retirement fund, her deferred compensation fund, and her life insurance policy free from any claims by the plaintiff.
(19). Each party shall retain sole possession of the bank savings and checking accounts listed in their respective financial affidavits
(20). The defendant shall turn over to the plaintiff within thirty days of this date all of the plaintiff's personal property in her possession including, but not limited to: his tools, pictures from his mother's home, Jessica's and Adam's childhood items, the plaintiff's basketball poster, boxes of stuffed animals and quilts and duplicate photographs of the family trip out west with Robert.
(20). The plaintiff is ordered to pay to the defendant's attorney the sum of $5,000 in attorneys fees within 60 days of the date of this judgement. Otherwise, the parties shall be responsible for their own attorneys fees.
(21). Each party shall be responsible for one-half of the final bill of $954.00 from Attorney Douglas Manion for his services as the court appointed guardian ad litem for the minor child in this case. Said bill is to be paid in full within 60 days of the date of this judgement.
Terence A. Sullivan Superior Court Judge